UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS B. HENDRICKSON,

        Plaintiff,

v.                                     Case No. 1:22-cv-1115
                                        Hon. Ray Kent
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

On August 28, 2020, plaintiff filed an application for DIB alleging a disability onset date of October 31, 2015. PageID.34. Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020. PageID.36. Plaintiff identified his disabling conditions as Legg-Calve-Perthes disease[1], arthritis, hydronephrosis left kidney, high blood pressure, depression, and anxiety. PageID.214. Prior to applying for DIB, plaintiff completed the 12th grade and had past relevant work as a bench assembler, metal furniture assembler, and cannery worker. PageID.42, 215. An administrative law judge (ALJ) reviewed plaintiff's

---

[1] Plaintiff's disability report referred to this condition as "Leg Calf Parthesis disease". PageID.214. Defendant explained that, "Legg-Calve-Perthes disease is a condition where blood supply to the head of the thigh bone in the hip is temporarily disrupted. This leads to gradual weakening of the bone and can lose its round shape." Defendant's Brief (ECF No. 12, PageID.992, fn. 2).

1

application de novo and entered a written decision denying benefits on October 4, 2021. PageID.34-44. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful employment since the alleged onset date of October 31, 2015 through his date last insured of December 31, 2020. PageID.36. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: Legg-Calve-Perthes of the bilateral hips; left hip degenerative joint disease; and lumbar degenerative disc disease. *Id*. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.37.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) except he can stand and/or walk for 2 hours out of an 8-hour workday. The claimant cannot perform any operation of foot controls with the right lower extremity. The claimant can occasionally crouch, crawl, kneel, balance as defined in the *Selected Characteristics of Occupations*, stoop, and climb. The claimant cannot balance on the right lower extremity alone. The claimant can tolerate occasional exposure to extremes of vibration.

PageID.39. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.42.

At the fifth step, the ALJ found that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level.[2] PageID.43.

---

[2] The Court notes that while the ALJ found that plaintiff had the residual functional capacity to perform light exertional work, the number of jobs at that level eroded when the ALJ included additional limitations, *i.e.*, only being able to

Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as final assembler (70,000 positions nationally), laminator (60,000 positions nationally), and inspector (75,000 positions nationally).  *Id*.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 31, 2015 (the alleged onset date) through December 31, 2020 (the date las insured).  PageID.44.

### III.   DISCUSSION

Plaintiff does not set forth a Statement of Errors as directed by the Court.[3]  Here, the Court construes plaintiff's claim as that the ALJ erred in evaluating the opinion of his treating physician, Dr. Wagner.  *See* Plaintiff's Brief (ECF No. 11, PageID.985).

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical

---

stand/walk for two out of eight hours a day and "no crouching at all."  PageID.71.  At this point, the ALJ identified jobs at the sedentary exertional level.  PageID.71-72.  As the ALJ explained,

> I find the claimant has the above residual functional capacity assessment. In sum, a combination of the claimant's severe physical impairments would limit the claimant to the light exertional level with the postural and environmental limitations noted above.  More specifically, the claimant's Legg-Calve-Perthes disease would limit the claimant to only standing and/or walking for 2 hours out of an 8-hour workday and no balancing on the right lower extremity alone.

PageID.42.

[3] The Court's Notice (ECF No. 9, PageID.974) states:

> The initial brief shall not exceed 20 pages and must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue.

5

findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2).[4]  If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

In addition, the regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(1).  Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we

---

[4] The regulations explain "supportability" as follows:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The regulations explain "consistency" as follows:  "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

6

considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

Here, the ALJ Robert J. Tjapkes[5] addressed Dr. Wagner's opinions as follows:

> In an undated opinion, Paul Wagner, DO, one of the claimant's medical providers, completed a work-related activities statement (12F). In the statement, he opined the claimant would be limited to less than the sedentary exertional level with periods to change position. He further opined the claimant had multiple manipulative/environmental limitations. He also opined the claimant would be absent from work more than 4 days per month (12F). I find this opinion to be unpersuasive as it is neither supported nor consistent with the overall record of evidence. Within the opinion, Dr. Wagner did not cite to any specific abnormal signs within the imaging and/or studies. He simply stated that the MRI/x-ray support these findings, noting he had a congenital disorder of the hips. This is also inconsistent with the overall record of evidence. Throughout the adjudicatory period, the claimant's imaging regarding the right hip showed abnormal signs, but overall, the rest of his imaging was generally unremarkable (1F/51, 75, 77; 2F/38 3F/11; 9F/4; 13F/14-15). Additionally, throughout the relevant period, the claimant's examinations showed some abnormal signs, but overall, were generally unremarkable (1F/8, 14, 22, 42, 61, 72, 88; 2F/1, 5; 5F/6, 11, 24, 39, 47; 8F/25, 31, 40; 10F/19; 11F/32; 14F/5, 25, 57, 84, 129, 201). Furthermore, throughout the relevant period, the claimant's treatment has remained conservative. In October of 2017, the claimant's orthopedic specialist recommended a right hip arthroplasty (3F/12-15); however, the record indicated he did not follow up with that treatment (9F/10). Overall, his treatment consisted of primarily medication with osteopathic manipulative treatment with physical therapy and injections (1F/14, 15, 19, 31, 39, 61, 88; 2F/2; 5F/7, 14, 16, 24, 40, 47; 8F/13-14, 25, 31, 41; 9F/10-14; 13F/6-7; 14F/5-6, 17-19, 31-32, 58, 86, 129, 200-202).

PageID.41-42.

Plaintiff contends that the ALJ provided no rationale and no analysis, and that

> Rather than rely on the Plaintiff's long-time treating provider, who has credentials more applicable to rendering an opinion in the present case, the ALJ put more weight on the opinions of Natalie Gray, MD and Rebecca Hagerty, DO. These were the medical consultants who reviewed the file and rendered the opinions on behalf of the Social Security Administration. These physicians are both merely board certified in family or general practice. PageID.79, 87.

---

[5] The Court notes that plaintiff identified the ALJ as Judge Lupisella. *See* Plaintiff's Brief (ECF No. 11, PageID.983).

7

Plaintiff's Brief (ECF No. 11, PageID.986-987).  Plaintiff's contentions are without merit.

As an initial matter, the ALJ pointed out that Dr. Wagner's opinion was undated. The date of the doctor's opinion is relevant, because plaintiff's claim is for his condition as it existed from his alleged onset date (October 31, 2015) through his date last insured (December 31, 2020).  *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984) ("insured status is a requirement for an award of disability insurance benefits").  Here, Dr. Wagner's undated opinion was faxed on March 24, 2021, almost three months after plaintiff's date last insured.  "[P]ost-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date."  *Grisier v. Commissioner of Social Security*, 721 Fed. Appx. 473, 477 (6th Cir. 2018).  While Dr. Wagner's opinion refers to plaintiff's diagnosis of "congenital disorder of hips" (PageID.658), it does not address plaintiff's condition as it existed during the relevant time period.  "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).[6]

Next, the ALJ's decision reviewed plaintiff's medical record from December 2015 through June 2021 (about six months after the plaintiff's date last insured).  PageID.40-41.  As discussed, *supra*, the ALJ reviewed Dr. Wagner's opinion and set out his rationale for finding that the opinion was unpersuasive, concluding that it was neither supported nor consistent with the overall record of evidence, *e.g.*, the medical record consisted of conservative treatment with evidence that plaintiff failed to follow up with a right hip arthroplasty.

---

[6] In this regard, the Court notes that plaintiff worked for a number of years with this congenital disorder, having past relevant employment as a bench assembler, metal furniture assembler, and cannery worker.  PageID.42, 185-187.

8

Finally, contrary to plaintiff's contention, the ALJ did not rely on the opinions given by non-examining physicians Natalie Gray, M.D. and Rebecca Haggerty, D.O.  Rather, the ALJ found the doctors' opinions unpersuasive,

> As for opinion evidence, on December 12, 2020 and April 24, 2021, Natalie Gray and Rebecca Hagerty, opined there was insufficient evidence (2A; 4A). I find these opinions to be unpersuasive, as they are inconsistent with the overall record of evidence, which warrants severe physical impairments.

PageID.41.[7]  For all of these reasons, plaintiff's claim that the ALJ erred in evaluating Dr. Wagner's opinion is denied.

### IV.   CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 4, 2024                             /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge

---

[7] Dr. Gray's adult medical disposition was "Insufficient Evidence" (PageID.78-80).  Similarly, Dr. Haggerty stated, "there is not enough consistent functional information to cover the DLI [date last insured] time period to make a determination"  (PageID.86).